THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HENRY MILLAN-MARTINEZ,

    **Plaintiff,**

    **v.**

SALVADOR MALDONADO-MIRANDA
ET AL,

    **Defendants.**

**Civil No. 20-1046 (ADC)**

## OPINION AND ORDER

Before the Court are Salvador Maldonado-Miranda, Nereida Candelario-Marrero, and their conjugal partnership's ("defendants") motions for judgment on the pleadings at **ECF No. 14** and motion to dismiss at **ECF No. 15**. Also before the Court is Henry Millán-Martínez's ("plaintiff") unopposed motion to enforce settlement at **ECF No. 19**.

For the reasons stated herein, the motions at **ECF No. 14, 15** are **DENIED.** The motion at **ECF No. 19** is **NOTED** and **GRANTED IN PART.**

I.    **Procedural Background**

    **A. The complaint**

On January 27, 2020, plaintiff filed a complaint for collection of monies against defendants under this Court's diversity jurisdiction. **ECF No. 1** at 1-2. The complaint seeks judgment in an amount no less than "$200,537.22." Id at 6. According to plaintiff, co-defendant Salvador Maldonado-Miranda, who was plaintiff's attorney for many years, asked plaintiff for a loan in

order to cover an outstanding debt related to a property in Corozal, Puerto Rico (the "property").

Id at 3. Plaintiff took out a loan against his home equity in Maryland in order to help out

defendants. Id at 3. He "obtained a $200,000.00 loan from his bank in Baltimore, at a variable

interest (fluctuating between 3.25% and 4.50%), lending said funds to defendants as of December

16, 2014." Id. "[D]efendants were to sell the [Corozal] property within a year and thus be able to

repay plaintiff no later than with[in] a year of the loan." Id. However, "defendants only paid for

the first eight monthly installments of plaintiff's home equity loan, making payments totaling

$23,489.82… and thereafter defaulted." In an attempt to reassure plaintiff of their commitment

to pay him back, defendants executed an agreement ("Acuerdo") acknowledging the debt, the

payment agreements agreed upon, and reiterated their promise to sell the property in Corozal

to repay plaintiff's loan. Defendants also tendered two copies of promissory notes related to the

property, leading plaintiff to belief that they had tendered valid notes that "served as collateral."

Id at 4. Due to defendants' defaults, however, "plaintiff had to undertake all remaining

obligations to satisfy the Home Equity Loan to the Baltimore Bank, his payments totaling

$200,537.22. Thus, defendants paid $23,489.82 and plaintiff paid $200,537.22, for a [] total paid

for the Home Equity Loan of $224,027.04." Id at 5.

   **B. Motion for judgment on the pleadings**

   On July 7, 2020, defendants filed a motion "for judgment on the pleadings" at **ECF No. 14**

raising the argument that the loan made by plaintiff to defendants on 2014 required a license

issued by the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCFI").[1]

Defendants' theory is based on their characterization of plaintiff as an operator of a "financial

lending business in Puerto Rico". Id at 2-3. Albeit its title, defendants' motion for "judgment of

the pleading" seeks an "order [for] plaintiff to produce the required [OCFI] license, in effect at

the time of the alleged financial loan on December, 2014, within 10 days." Id at 3.

Plaintiff responded at **ECF No. 17**. Among plaintiff's more salient arguments, plaintiff

posits that the crux of defendants' motion is premised on a factual issue that is not only absent

from the operative pleadings but is also false and contrary to the allegations in the complaint.

To wit, plaintiff negates that he operates a "financial lending business in Puerto Rico."

Defendants did not move for leave to reply.

**C. Motion to dismiss for lack of diversity jurisdiction**

On even date, defendants filed a motion to dismiss for lack of jurisdiction. **ECF No. 15**. In

essence, defendants challenged this Court's diversity jurisdiction by questioning plaintiff

domicile in Maryland. Defendants sustain that at the "time of the filing of this complaint

(January 27, 2020) and until the present time, plaintiff has resided continuously at his Apartment

210, Palma Nova Plaza in Palmas del Mar Humacao, PR." Id at 3 and at n.1.

In his response at **ECF No. 18**, plaintiff submitted a Declaration Under penalty of Perjury

and several documents to evince his domicile at Maryland. **ECF No. 18-1, 18-2, 18-3, 18-4, 18-5,

18-6, 18-7**.

---

[1] Thereby conceding that plaintiff did in fact lend defendants money as stated in the complaint.

Defendants did not move for leave to reply.

**D. Motion for Enforcement of Settlement**

On August 25, 2020, plaintiff moved the Court to "enforce a settlement" at **ECF No. 19** claiming the case was settled between the parties. In essence, plaintiff claims that "on the same day defendants were served with a copy of the complaint… defendants' counsel reached out to plaintiff's counsel with an offer to settle the caption lawsuit by way of transferring to plaintiff title to [the Corozal property]" Id at 2, offer that was accepted by plaintiff. Plaintiff submitted several documents in support such as texts messages, emails and a statement under penalty of perjury. *See* **ECF No. 19-1** through **19-7**.

**E. Defendants' failure to defend**

Defendants did not respond to plaintiff's motion for enforcement of settlement at **ECF No. 19**. However, on October 15, 2020, attorney Mariceli Pérez-González filed a notice of special appearance to inform the passing of defendants' counsel of record, Osvaldo Pérez-Marrero. **ECF No. 20**. Attorney Mariceli Pérez-González informed that "we have provided Defendants with the legal file from attorney [Pérez-Marrero]'s office and advised them to seek new legal representation." Id at 1. In an abundance of caution, attorney Mariceli Pérez-González asked for an order granting defendants 90 days to announce legal representation and to file a response to plaintiff's motion "to enforce settlement." Id.

The Court granted the petition for extension of time of 90 days to announce new legal representation and to file a response, if any, to plaintiff's motion. **ECF No. 22**. The 90-day extension of time expired on January 15, 2021. By that date, defendants had not announced new

legal counsel nor requested an extension to do so. Because of defendants' failure to comply

within the original 90-day extension of time, the Court granted defendants an additional "14

days to inform the Court whether or not they have retained new legal representation and to

inform if they have received copy of the plaintiff's motion at ECF No. 19." Id. To this date,

defendants have failed to comply with this Court's order and have failed to otherwise defend

since July 7, 2020.

II.     LEGAL STANDARD

A party may move to dismiss an action for lack of subject matter jurisdiction pursuant to

Fed. R. Civ. P. 12(b)(1). In this type of jurisdictional challenge, "the standard applied to a 12(b)(1)

motion is similar to the standard applied to a 12(b)(6) motion. Under *Bell Atlantic v. Twombly*, 550

U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his

entitlement [with] more than labels and conclusions." Thus, a plaintiff must now present

allegations that "nudge [his] claims across the line from conceivable to plausible" in order to

comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal*, 556

U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process

under the current context-based "plausibility" standard established by *Twombly* and *Iqbal*,

*supra.* "Context based" means that plaintiff must allege facts that comply with the basic elements

of the cause of action. *See Iqbal*, 556 U.S. at 671–672, 129 S.Ct. 1937 (explaining the basic elements

of a *Bivens* claim and thereafter concluding that facts were not sufficiently provided, leaving

only conclusory statements). First, the Court must "accept as true all of the allegations contained

in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal, supra*) (internal quotation omitted). Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Id.*  Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sánchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir.2009).

## III.    DISCUSSION

### A. Defendants' motion to dismiss for lack of diversity jurisdiction

Defendants' 4-page motion to dismiss is based on a single premise, at all times relevant, "plaintiff has resided continuously at his Apartment…in Palmas del Mar Humacao, PR." **ECF No. 15** at 3-4. Notably, defendants did not submit to the Court any document in support of their contention. Neither did defendants seek leave from the Court to reply to plaintiff's response, which was accompanied by several documents in support as well as a statement under penalty of perjury. Furthermore, defendants did not develop their argument beyond simply stating that plaintiff's domicile was Puerto Rico for purposes of diversity. *See* **ECF No. 15** at 3-4.

For purposes of diversity, citizenship is determined by domicile. "A person's domicile 'is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning[.]'" *Rodríguez–Díaz v. Sierra–Martínez*, 853 F.2d 1027, 1029 (1st Cir. 1988) (quoting 13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3612, at 526 (2d ed. 1984)). "Proving domicile requires two showings: (1) 'physical

presence in a place,' and (2) 'the intent to make that place one's home.'" *Aponte–Dávila v. Municipality of Caguas*, 828 F.3d 40, 46 (1st Cir. 2016) (quoting *Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 365 (1st Cir. 2001)). "[C]urrent residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts… churches, clubs and other associations; place of employment or business; driver's license and other automobile registration; payment of taxes" are only some of the factor courts take into account when examining the extent of a person's "ties to the purported domicile." *García-Pérez v. Santaella*, 364 F.3d 348, 351 (1st Cir. 2004) (quoting 13B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3612 (2d ed.1984)).

Contrary to defendants' unsupported assumption in connection with plaintiff's domicile, plaintiff responded by submitting a Declaration Under Penalty of Perjury attesting to the following:

> i) That his domicile at the time of the filing of the complaint, at present, and ever since August of 1988, is at his property at 6124 Haddon Hall Rd., Baltimore, Maryland, 21212.
>
> ii) That he has a driver's license issued by the State of Maryland, number M-450-303- 000-325, in which the address that appears as his home address is 6124 Haddon Hall Rd., Baltimore, Maryland, 21212.
>
> iii) That he has been registered to vote in Baltimore County, and has exercised his right to vote thereon, since November 8, 1988, up to the present.
>
> iv) That he has a library card from the Baltimore County Public Library issued to his name, No. 21183035691632.
>
> v) That he carries medical insurance with the John Hopkins Medicine Medicare Plan, member I.D. No. 100007410, a medical plan sponsored by John Hopkins Hospital, located in Baltimore, Maryland.

vi) That he is a regular American Red Cross Blood Donor of the Greater Chesapeake & Potomac Region, in Baltimore, Maryland.

vii) That he has a property located in apartment 210, Palma Nova Plaza at Palmas del Mar Resort, in Humacao, Puerto Rico, which he uses for vacation purposes when visiting Puerto Rico, and which he acquired in December 1994 for vacation purposes only, and that it has never been his principal residence.

viii) That his domicile, and hence his citizenship for diversity jurisdiction purposes, at the time of the filing of the complaint, at present, and ever since August of 1988, is in Baltimore, Maryland, which is the place where his domicile is located and to where he always intends to return ("*animus revertendi*") after any travel he does outside of Baltimore.

*See* **ECF No. 18** at 2-3; **ECF No. 18-1**.

Plaintiff's statements summarized above are not unsupported. Plaintiff also submitted copy of his drivers' license issued by the state of Maryland, copy of his voting record in the state of Maryland, copy of his Baltimore County Public Library card,  copy of his medical insurance card with the John Hopkins Medicine Medicare Plan, copy of his Valued Blood Donor American Red Cross card of the Greater Chesapeake & Potomac Region. **ECF Nos. 18-2** through **18-7**.

Considering that "[n]o single factor is dispositive, and [that] the analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature" *García-Pérez v. Santaella*, 364 F.3d at 351 (citing *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 12 (1st Cir. 1991)), the documents and statement submitted by plaintiff as well as the lack of response by defendants, the Court hereby **DENIES** defendants' motion to dismiss at **ECF No. 15.** Plaintiff has submitted sufficient evidence of domicile in Maryland and his *animus revertendi*.

**B. Defendants' motion for judgment on the pleadings**

On July 7, 2020, defendants filed a 3-page motion "for judgment on the pleadings" at **ECF No. 14.** The totality of defendants' argument at **ECF No. 14** is that plaintiff cannot legally collect on the loan because he did not possess a license issued by the OCFI at the time he lent the money to defendants. Id at 2-3. This is because, according to defendants, by giving defendants the loan, plaintiff became a "financial lending business in Puerto Rico." Id at 2-3. Defendants' motion, however, does not cite any Puerto Rico statute in support.

Fed. R. Civ. P. 12(c). Rule 12(c) allows a motion on the pleadings at any time "[a]fter the pleadings are closed but within such time as not to delay the trial." A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss." *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008)(citing *Curran v. Cousins*, 509 F.3d 36, 43–44 (1st Cir.2007). "Because such a motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." *R.G. Fin. Corp. v. Vergara-Núñez*, 446 F.3d 178, 182 (1st Cir. 2006)(citing *Rivera–Gómez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988)(emphasis added)). Therefore, "there is no resolution of contested facts in connection with a Rule 12(c) motion[.]" Id.

First, the Court notes that defendants' motion "for judgment on the pleadings" does not seek judgment but rather prays for the Court to "order plaintiff to produce the required OCIF license, in effect at the time of the alleged financial loan on December, 2014." Second, instead of relying on the complaint's allegations, as they should under Rule 12(c), defendants move the

Court to first order plaintiff to submit extrinsic evidence in order to corroborate defendants'

unsupported argument. Third, defendants ask the Court to rule upon their motion for

"judgment on the pleadings" based on a "fact" that is nowhere to be found among the allegations

of the complaint. Without a doubt, defendants petition under Rule 12(c) is misguided. It is

impossible for the Court to rule in defendants' favor "view[ing] the facts contained in the

pleadings in the light most favorable to the [plaintiff] and draw[ing] all reasonable inferences

therefrom to the [plaintiff]'s behoof." *R.G. Fin. Corp. v. Vergara-Núñez*, 446 F.3d at 182.

Finally, defendants' substantive legal argument, which consists of a single paragraph

with no discussion whatsoever, makes reference to "*Piovanetti v Touma*, 178 DPR 745, 2010 PR

Supreme, Lexis 57 (PR 2010); D*ennis Metro Invs. Vs City Fed*, (sic) 121 DPR 197 and *Rosado-Rosario

v. Pagán-Santiago*, (sic) 196 DPR 180." *See* **ECF No. 14** at 1, 2. These are Puerto Rico Supreme

Court opinions in the Spanish language for which, with the exception of *Dennis, Metro Invs. v.

City Fed. Savs.*, 21 P.R. Offic. Trans. 186, 1988 WL 580822 (P.R. May 5, 1988),[2] no official

translations is available. Title 48 U.S.C. § 864 requires "[a]ll pleadings and proceedings in the

United States District Court for the District of Puerto Rico shall be conducted in

the English language." Similarly, Local Rule 5(g) requires in part, that "[a]ll documents not in

---

[2] Notably, defendants do not set forth any argument or explanation as to how *Dennis, Metro Invs. v. City Fed. Savs.*,21 P.R. Offic. Trans. 186, 1988 WL 580822 (P.R. May 5, 1988) affects or applies to the case at hand. A review of the *Dennis, Metro Invs. v. City Fed. Savs.*,21 P.R. Offic. Trans. 186, 1988 WL 580822 (P.R. May 5, 1988) opinion reveals that it has nothing to do with the controversy raised by defendants in connection with the need to obtain a license by the OFCI. Rather, in that opinion the Puerto Rico Supreme Court "analyze[d] the following concepts: the intermediary in the context of sec. 1348(2) of the Civil Code, 31 L.P.R.A. § 3773(2), the contract in the prejudice of third persons, and the bilateral contract to purchase and sell." *Dennis, Metro Invs. v. City Fed. Savs.*,21 P.R. Offic. Trans. 186, 1988 WL 580822 (P.R. May 5, 1988).

the English language which are presented or filed, whether as evidence or otherwise, must be

accompanied by a certified translation into English prepared by an interpreter certified by the

Administrative Office of the United States Courts." The First Circuit requires strict enforcement

of the English-language requirement where the untranslated document is key to the outcome of

the proceedings. *Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008).

Defendants did not move for an extension of time to file certified translations, thereby violating

Local Rule 5(g). Thus, because defendants did not make reference to any opinion or statute in

the English language or certified translation thereof, defendants' motion contain absolutely no

legal authority upon which the Court can rely in making its determination.

Even if the Court took it upon itself to find a Puerto Rico statute seemingly related to

defendants' argument, their request will still crumble. As correctly pointed out by plaintiff's

response, the legal disposition which defendants ostensibly refer to in their motion for judgment

on the pleadings, is Title 7 of the PR Laws Ann., which regulates financial institutions within the

Commonwealth of Puerto Rico. In relevant, Title 7 § 1071 of provides:

> (j) Financial intermediation business.- Offering services or engaging in financial
> planning, consulting or advisory activities, granting of loans, loan and financing
> brokerage activities other than mortgage loans on residential real estate, through
> personal, telephone, or written contact, or through advertisements in newspapers;
> publications, handouts, posters, banners, telephone directories, radio, television
> or through any other similar medium, or rendering said services to a person other
> than a relative within the fourth degree of consanguinity, or second degree of
> affinity, **and that the rendering of said services requires the payment of a service
> charge by the person for whom the loan or financing is negotiated, transacted,
> planned, granted, or obtained, or a third party by agreement between the
> parties**.

PR Laws Ann. tit. 7 § 1071 (emphasis added).

Notably, nowhere in the complaint does it alleges that plaintiff required payment of a

"service charge" or any other consideration that would result in financial gain. Therefore, even

if the Court were to consider defendants' unsubstantiated motion, the Court must "view the

facts contained in the pleadings in the light most favorable to the [plaintiff] and draw all

reasonable inferences therefrom to the [plaintiff]'s behoof." *R.G. Fin. Corp. v. Vergara-Núñez*, 446

F.3d at 182. Viewing the facts in the complaint in plaintiff's favor, the Court cannot find any

allegations standing for the proposition that plaintiff asked defendants for a "service charge" at

the time he made the loan or that plaintiff otherwise violated any laws.

For all the above, the motion for judgment on the pleadings at **ECF No. 14** is **DENIED**.

**C. Defendants' failure to defend and default**

As discussed before, after filing their motion to dismiss at **ECF No. 15** and motion for

judgment on the pleadings at **ECF No. 14,** both docketed on July 7, 2020, defendants have failed

to otherwise defend in this action. Notably, after these two filings on July 7, 2020, plaintiff filed

responses to both filings and submitted several documents in support thereof. *See* **ECF Nos. 17,**

**18**. Defendants did nothing to secure leave to reply nor did they move for an extension of time

for that matter. Plaintiff subsequently moved for "enforcement of settlement." **ECF No. 19**. That

motion is not without consequences as it states that defendants entered and agreed to settle the

case by delivering title of defendants' property in Corozal to plaintiff.

More importantly, plaintiff's motion at **ECF No. 19** appended several documents evincing

communications sustained by plaintiff and an attorney, Juan Carlos Bigas, who identified

himself as defendants' counsel for purposes of settlement, but did not file a notice of appearance

in the instant case. Notwithstanding the seriousness of such allegations, defendants failed to respond.

It was not until October 15, 2020, that attorney Mariceli Pérez-González filed a notice of special appearance to inform the passing of defendants' counsel of record, Osvaldo Pérez-Marrero. **ECF No. 20**. Attorney Mariceli Pérez-González informed that since October 2020 "**we have provided Defendants with the legal file from attorney [Osvaldo Pérez-Marrero]'s office and advised them to seek new legal representation**." Id at 1 (emphasis added). In an abundance of caution, attorney Mariceli Pérez-González asked for an order granting defendants 90 days to announce legal representation and to file a response to plaintiff's motion "to enforce settlement," which the Court granted. Id.

The 90-day extension of time expired on January 15, 2021. Defendants failed to announce new legal counsel or to move for an extension of time to respond to the motion for enforcement of settlement *pro se,* which was a very valid alternative considering that co-defendant Salvador Maldonado-Miranda is an attorney.[3]

Empathetic to the fact that defendants' counsel of record passed away, the Court went even further and granted defendants an additional "14 days to inform the Court whether or not they have retained new legal representation and to inform if they have received copy of the plaintiff's motion at ECF No. 19." **ECF No. 22**. To this date, however, defendants have failed to comply with this Court's order and have failed to otherwise defend. Defendants, among which

---

[3] United States District Court for the District of Puerto Rico Bar No. 117602, Puerto Rico Supreme Court Bar No. 4125.

there is an attorney, have failed to otherwise defend or even appear via filing of any kind in this

case since July 7, 2020.

Accordingly, Clerk of Court is to enter default against defendants pursuant to Fed. R. Civ.

P. 55. The Clerk of Court is to notify defendants of this Order to any available known addresses,

including co-defendant's Salvador Maldonado-Miranda, Esq., address available in the Puerto

Rico Supreme Court directory: 30A Calle Gándara, Corozal, Puerto Rico, 00783.

### C. Motion for "enforcement of settlement"

After filing responses for both of defendants' motions to dismiss and for judgment on the

pleadings, plaintiff filed a motion for "enforcement of settlement," at **ECF No. 19,** basically

stating that the parties had reached an agreement to settle the case. Plaintiff claims that

defendants, through attorney Juan Carlos Bigas, offered to settle the case "by way of transferring

to plaintiff title to [the Corozal property]" Id at 2. According to plaintiff, the offer was accepted,

and the parties agreed to execute a deed for those purposes as well as motion for voluntary

dismissal of this action.  Plaintiff submitted several documents in support such as texts messages,

emails and a statement under penalty of perjury. *See* **ECF No. 19-1** through **19-7**.[4]

However, the settlement conversations, the offer and acceptance thereof were held with

attorney Juan Carlos Bigas who is not defendants' counsel of record in this case. When

questioned about the settlement, defendants' counsel of record, Osvaldo Pérez-Marrero, replied

he did not know of such agreement and informed plaintiff that he would discuss the issue with

---

[4] Plaintiff moved for an extension of time to submit certified translations for the text messages and other documents in the Spanish language. **ECF No. 19** at 14. However, to this date, plaintiff is yet to submit the certified translation thereof.

his clients. **ECF No. 19** at 6. Months later, on June 15, 2020, defendants' counsel of record, Osvaldo Pérez-Marrero informed plaintiff that "defendants did not now want to enter said agreement." Id at 8-9. As explained herein below, this presents an issue under Puerto Rico as to defendants' consent to the purported settlement.

A settlement constitutes is recognized as a contract in Puerto Rico. PR Laws Ann. Tit. 31 § 4821. *See López Morales v. Hosp. Hermanos Meléndez Inc.*, 447 F. Supp. 2d 137, 141–42 (D.P.R. 2006).These contracts encompass three essential elements: (1) that the parties believe, whether rightly or not, that they are immersed in an uncertain legal relationship; (2) the parties wish to eliminate the uncertain legal relationship by substituting it with one that they deem certain and incontrovertible; and (3) reciprocal concessions must be made. *Citibank v. Dependable Ins. Co., Inc.*, 121 D.P.R. 503, 512–513, 21 P.R. Offic. Trans. 496, 506 (internal citation omitted). As with all contracts, in order for there to be a valid settlement agreement there must be: (1) consent of the parties to the contract; (2) a definite object as the subject of the contract; and (3) a cause for the obligation. *See,* 31 P.R. Laws Ann. § 3391. Importantly here, contracts, including a settlement, is deemed perfected as soon as the parties give their consent; from that time on the parties are bound to fulfill their obligations under the contract. P.R. Laws Ann. § 3375. Under Puerto Rico law, verbal contracts are valid and enforceable. *See* 31 P.R. Laws Ann. § 3451.

Plaintiff concedes that the purported settlement agreement was reached between plaintiff and an attorney who is not and has not ever been defendants' counsel of record in this case, and without personal participation by defendants. Aware of that fact and the applicable law, plaintiff at **ECF No. 19** requests the Court to enter an Order that directs: (1) defendants to "either

accept or deny all the facts herein offered as evidence by plaintiff regarding the fact that they

authorized attorney Juan Carlos Bigas to offer plaintiff a settlement of the case by way of the

execution of a deed of "Assignment in Payment" ("Dación en Pago"), as herein alleged, and

whether plaintiff accepted said offer or not[,]" (2) a "sworn and/or under penalty of perjury

statement should be obtained from attorney Juan Carlos Bigas on the matter." **ECF No. 19** at 12-

13.

Considering plaintiff's motion at **ECF No. 19** is unopposed and in light of the applicable

Puerto Rico substantive law cited before, the motion at **ECF No. 19** is **NOTED** and **GRANTED**

**IN PART**.

Accordingly, plaintiff is granted 14 days to serve defendants with a request for

admissions pursuant to Fed. R. Civ. P. 36 with all "written requests" necessary to support its

allegations at **ECF No. 19** as well as requests for defendants to admit the "genuineness" of all

relevant documents. Defendants are granted 7 days to serve their answers thereto. If proper,

plaintiff may then move for summary judgment based on the assertions at **ECF No. 19**. Plaintiff's

request for an extension of time to file certified translations is **GRANTED**. Plaintiff is granted 30

days to file certified translations for all Spanish language documents attached to **ECF No. 19**.[5]

IV.    **CONCLUSION**

In light of all the above, the Court Orders the following:

(i) Defendants' motions at **ECF Nos. 14, 15** are **DENIED**.

---

[5] Failure to submit certified translations of Spanish language documents will preclude consideration of the exhibits or intended evidence in the Spanish language.

(ii) Clerk of Court is to enter default against defendants pursuant to Fed. R. Civ. P. 45. The

Clerk of Court is to notify defendants of this Order to any available known addresses, including

co-defendant's Salvador Maldonado-Miranda, Esq., address available in the Puerto Rico

Supreme Court directory: 30A Calle Gándara, Corozal, Puerto Rico, 00783.

(iii) Plaintiff's motion at **ECF No. 19** is **NOTED** and **GRANTED IN PART**. Accordingly:

> (a) plaintiff is granted 14 days to serve defendants with a request for admissions
>
> pursuant to Fed. R. Civ. P. 36 with all "written requests" necessary to support its
>
> allegations at **ECF No. 19** as well as requests for defendants to admit the
>
> "genuineness" of all relevant documents. Defendants are granted 7 days to serve
>
> their answers thereto. If proper, plaintiff may then move for summary judgment
>
> based on the assertions at **ECF No. 19** defendants' answers to the requests for
>
> admission**.**
>
> (b) Plaintiff's request for an extension of time to file certified translations at **ECF**
>
> **No. 19** is **GRANTED**. Plaintiff is granted 30 days from the issuance of this order
>
> to file certified translations for all Spanish language documents attached to **ECF**
>
> **No. 19**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 31st day of March, 2021.

                                                              **S/ AIDA M. DELGADO-COLÓN**
                                                              **United States District Judge**